UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DARRELL PERKINS,

        Petitioner,

vs.

BEN CURRY, Warden,

        Respondent.
_____/

No. C 06-6012 PJH (PR)

**ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS**

Petitioner, a California prisoner currently incarcerated at the Correctional Training Facility in Soledad, has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the June 2004 decision by the Board of Parole Hearings ("Board") finding petitioner unsuitable for parole. For the reasons set forth below, the petition will be denied.

## BACKGROUND

The Board summarized the facts of the commitment offense as follows:

> On 12/4/86 at approximately 10:00 A.M., witness, Edgar Kipp Eastman was outside of 2102 East Piru Street, East Compton, when he heard the sound of a single gunshot. Later, at approximately 5:00 P.M., he saw Darryl Perkins (defendant) walking near the above residence when the defendant asked him (Edgar Eastman) to help him get rid of the "stiff". The defendant told Eastman that he had shot Leonard Moss because he caught Daphne (defendant's girlfriend and co-defendant) in the bathroom, and thought Leonard Moss had raped her. Defendant said he shot the victim in the head. After passing through the area of the crime and after seeing the body, Eastman agreed to help the defendant. Defendant and Eastman then carried the body to the kitchen where they tied the body up with an electric cord. Daphne Henry kept a look out for the police as Defendant and Eastman then carried the body out to Daphne's Cadillac. They placed the body in the Cadillac's trunk. The three of them, Defendant, Co-Defendant Eastman and Co-defendant Henry then drove off on the Long Beach Freeway, connected with Interstate 5, and headed toward San Fernando Valley. Subsequently, they dumped the victim's

> body near the Angeles National Forest. Later that night, Eastman saw a mattress being burned across the street from where he lived. The Fire Department arrived and investigated. Subsequently, Perkins and Eastman were arrested on the above charge of murder.

Answer Ex. B (Life Prisoner Evaluation Report, January 2004 Calendar).

On November 2, 1987, petitioner pleaded guilty to second degree murder with use of a firearm, and was sentenced to seventeen years to life. Answer Ex. A (Judgment).

On June 23, 2004, petitioner, who was 44 years old and represented by counsel, appeared for a subsequent parole hearing before the Board, which denied parole for two years. Petitioner filed state habeas petitions in the superior court and court of appeal, which denied relief. Answer Exs. F, G. Petitioner filed a petition for review in the state supreme court, which summarily denied review. Answer Ex. H.

On September 27, 2006, petitioner filed this petition for a writ of habeas corpus. The court ordered respondent to show cause why a petition should not be issued. Respondent has filed an answer, and petitioner has filed a traverse. Respondent does not dispute that the petition is timely and presents claims that were exhausted in state court. The petition is submitted for a decision on the merits.

**STANDARD OF REVIEW**

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

2

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

Under Section 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340.

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion of a state court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-806 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n. 2 (9th Cir. 2000), *cert. denied*, 534 U.S. 944 (2001). Where the state court gives no reasoned explanation of its decision on a petitioner's federal claim and there is no reasoned lower court decision on the claim, a federal court conducts "an independent review of the record" to determine whether the state court's decision was an unreasonable application of clearly established federal law. *See Plascencia v. Alameida*, 467 F.3d 1190, 1198 (9th Cir. 2006); *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).

**DISCUSSION**

As grounds for federal habeas relief, Petitioner claims that: (1) his due process rights were denied when the parole board denied him parole without some evidence to support its conclusion that releasing him would be a danger to public safety; (2) the denial

of parole based on the unchanging facts of his crime violated due process; and (3) the denial violated his plea agreement. These claims do not merit habeas relief.

## I.     Due Process in Parole Suitability Determinations

### A.     Some Evidence Standard of Judicial Review

The Ninth Circuit has determined that a California prisoner with a sentence of a term of years to life with the possibility of parole has a protected liberty interest in release on parole and therefore a right to due process in the parole suitability proceedings. *See McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir. 2002) (citing *Board of Pardons v. Allen*, 482 U.S. 369 (1987); *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1 (1979)). *See also Irons v. Carey*, 505 F.3d 846, 851 (9th Cir.), *reh'g and reh'g en banc denied*, 506 F.3d 951 (9th Cir. 2007); *Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1127-28 (9th Cir. 2006), *reh'g and reh'g en banc denied*, No. 05-16455 (9th Cir. Feb. 13, 2007); *Biggs v. Terhune*, 334 F.3d 910, 915-16 (9th Cir. 2003).

A parole board's decision satisfies the requirements of due process if "some evidence" supports the decision. *Sass*, 461 F.3d at 1128-29 (adopting some evidence standard for disciplinary hearings outlined in *Superintendent v. Hill*, 472 U.S. 445, 454-55 (1985)). *See also Irons*, 505 F.3d at 851. "To determine whether the some evidence standard is met 'does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached'" by the parole board. *Sass*, 461 F.3d at 1128 (quoting *Hill*, 472 U.S. at 455-56). The "some evidence standard is minimal, and assures that 'the record is not so devoid of evidence that the findings of the . . . board were without support or otherwise arbitrary.'" *Id.* at 1129 (quoting *Hill*, 472 U.S. at 457).

Respondent contends that an inmate is entitled to only minimal protections to satisfy due process in a parole proceeding. Citing *Greenholtz*, Respondent contends that due process in state parole procedures is satisfied merely if they afford the inmate an opportunity to be heard and a decision informing him why he did not qualify for parole

4

release. The Ninth Circuit, however, has held that requiring less than the some evidence standard "would violate clearly established federal law because it would mean that a state could interfere with a liberty interest - that in parole - without support or in an otherwise arbitrary manner." *Sass*, 461 F.3d at 1129. Thus, the some evidence standard of *Superintendent v. Hill* is clearly established law in the context of parole denial for purposes of federal habeas review. *Ibid*.

In order to determine whether the state court decisions were contrary to, or an unreasonable application of, clearly established federal law, the court looks to the last reasoned state court opinion, which is that of the court of appeal denying the state habeas petition. Answer Ex. G (*In re Perkins*, Case No. B183274, slip op. at 1 (Cal. Ct. App. July 28, 2005)). *See Shackleford*, 234 F.3d at 1079 n.2.

### B.  Board's Unsuitability Determination

In his first claim for relief, petitioner contends that his due process rights were violated because the Board's decision was not supported by some evidence. The court of appeal denied petitioner's first claim on the following grounds:

> The petition fails to show that the denial of parole is not supported by "some evidence" that the particular circumstances of petitioner's offense do not "exceed the minimum elements necessary to sustain a conviction of the offense." (*In re Dannenberg* (2005) 34 Cal. 4th 1061, 1071, 1078-95.) The petition also fails to show the denial of parole on the other grounds stated by the Board of Prison Terms was not supported by "some evidence."

*In re Perkins*, slip op. at 1.

#### 1.  State Regulations Governing Parole Suitability

In assessing whether the Board's denial of parole was supported by some evidence, the court's "analysis is framed by the statutes and regulations governing parole suitability determinations in the relevant state." *Irons*, 505 F.3d at 851 (citing *Biggs*, 334 F.3d at 915). "Accordingly, here we must look to California law to determine the findings that are necessary to deem a prisoner unsuitable for parole, and then must review the record in order to determine whether the state court decision holding that these findings were supported by 'some evidence' in [petitioner's] case constituted an unreasonable application

5

of the 'some evidence' principle articulated in *Hill*, 472 U.S. at 454, 105 S.Ct. 2768." *Ibid.* Under California law, "[t]he Board must determine whether a prisoner is presently too dangerous to be deemed suitable for parole based on the 'circumstances tending to show unsuitability' and the 'circumstances tending to show suitability' set forth in Cal. Code. Regs., tit.15 § 2402(c)-(d)." *Ibid.*

Title fifteen, section 2402, of the California Code of Regulations sets forth the criteria for determining whether an inmate is suitable for release on parole. The circumstances tending to show that a prisoner is unsuitable include the following: (1) the commitment offense, where the offense was committed in "an especially heinous, atrocious or cruel manner;" (2) the prisoner's previous record of violence; (3) "a history of unstable or tumultuous relationships with others;" (4) commission of "sadistic sexual offenses;" (5) "a lengthy history of severe mental problems related to the offense;" and (6) "serious misconduct in prison or jail." Cal. Code. Regs., tit. 15 § 2402(c). The circumstances tending to show that a prisoner is suitable for parole include the following: (1) the prisoner has no juvenile record; (2) the prisoner has experienced reasonably stable relationships with others; (3) the prisoner has shown remorse; (4) the prisoner committed his crime as the result of significant stress in his life; (5) the prisoner suffered from Battered Woman Syndrome at the time of committing the crime; (6) the prisoner lacks any significant history of violent crime; (7) the prisoner's present age reduces the risk of recidivism; (8) the prisoner "has made realistic plans for release or has developed marketable skills that can be put to use upon release;" and (9) institutional activities "indicate an enhanced ability to function within the law upon release." Cal. Code. Regs., tit. 15 § 2402(d).

Petitioner argues that the Board violated his right to due process by applying the some evidence standard as the standard of proof, and contends that parole decisions should be governed by the preponderance of evidence standard. However, Petitioner offers no authority requiring the Board to apply a preponderance of evidence standard of proof for parole suitability determinations. To the contrary, state courts have recognized "[a]lthough principles of due process apply, the parole authority is not required to proceed

with the formality required of courts." *In re Morrall*, 102 Cal.App.4th 280, 294 (2002) (citing *In re Powell*, 45 Cal.3d 894, 904 (1988)).  Rather, "'the precise manner in which the specified factors relevant to parole suitability are considered and balanced lies within the discretion of the [Board], but the decision must reflect an individualized consideration of the specified criteria and cannot be arbitrary or capricious.'" *In re Burdan*, 161 Cal. App. 4th 14, 24 (2008) (quoting *In re Rosenkrantz*, 29 Cal. 4th 616, 677 (2002), *cert. denied*, 538 U.S. 980 (2003)).  *See also In re Singler*, 161 Cal. App. 4th 281, 294 (2008) (recognizing that parole release decisions are left to the Board's discretion and subject to limited judicial review) (citing *Rosenkrantz*, 29 Cal. 4th at 655).

### 2.     **Parole Unsuitability**

At the June 2004 hearing, the Board reviewed petitioner's central file and prior parole hearing transcript, progress since his last parole hearing, psychological report, and any other information bearing on parole suitability.  Answer Ex. C at 7.  The Board considered several factors favoring petitioner's suitability for parole: petitioner had a commendable disciplinary record and twelve years had passed since his last "115" serious rules violation report; petitioner pursued vocational training and education while incarcerated; petitioner was currently a lead man in the prison's furniture factory and obtained a supportive letter from his supervisor; and petitioner participated in Alcoholics Anonymous ("AA") and Narcotics Anonymous ("NA"), although he stopped attending AA meetings in 2002 to concentrate on his job training.  Answer Ex. C at 36-38, 43, 46-47, 68-69.

The Board also considered petitioner's most recent psychological report, dated June 8, 2001, which estimated that petitioner's violence potential was "no higher than the average citizen in the community," based on the following findings by the psychiatrist: no record of arrests for violent offenses; no clear indication of gang affiliation; the nonviolent nature of his criminal lifestyle which was related to his drug dependency, other than the murder for which he was convicted; and petitioner's statement that he had never had a gun until just two days before the murder.  Answer Ex. E at 2 (Mental Health Evaluation, June 8,

2001). The Board found that the 2001 psychiatric assessment was inconclusive and inconsistent with prior assessments and with the Board's findings that the commitment offense was extremely violent and petitioner's statement that the gun was already in the home. Answer Ex. C at 65, 82.

Having considered factors of suitability, the Board nonetheless concluded that petitioner posed an unreasonable risk of danger to society and a threat to public safety if released from prison based on the following factors of unsuitability: (1) the commitment offense was carried out in an especially cruel and unusual manner; (2) petitioner had an escalating pattern of criminal conduct; (3) petitioner had an unstable social history and failed to profit from society's previous attempts to correct criminality including parole, county jail, and a prior prison term; (4) petitioner did not sufficiently participate in self-help and therapy programs; (5) petitioner lacked realistic parole plans.

### a. Commitment Offense

The Board determined that the commitment offense was carried out in an especially cruel and callous manner based on the following findings: the offense was carried out in a dispassionate and calculated manner, as evidenced by petitioner's possession of a loaded firearm while he was on parole; petitioner shot the victim in the head, and collaborated with his girlfriend, Ms. Henry, and Mr. Eastman to dispose of the body in a remote mountainous area; the victim's body was abused or defiled when it was dumped in that remote area and discovered in an advanced decomposed state; the motive for the crime was very trivial in relation to the offense, in that petitioner came home to find the victim there and believed the victim had raped Ms. Henry, then shot and killed the victim. Answer Ex. C at 80-81.

The record reflects that petitioner shot the victim in the head, then tied up the victim's body with an electric cord and loaded the body in the trunk of a car with Mr. Eastman's help in order to dispose of it near the Angeles National Forest. Answer Ex. D at 2-3 (Probation Officer's Report). The record also reflects that petitioner told Mr. Eastman not to tell anyone what had happened, because if the body was ever found, petitioner would know Mr. Eastman had talked. *Id.* at 3.

1 Regarding petitioner's possession of the gun while he was on parole for a burglary
2 conviction, he testified at the 2004 hearing that the gun "was in the bedroom. I don't know
3 how it got there." Answer Ex. C at 65. As the Board noted, this statement was inconsistent
4 with his earlier statement reflected in Dr. Gamard's June 2001 mental health report
5 indicating that petitioner obtained the gun two days before the murder because of threats
6 from other drug dealers. Answer Ex. E at 2. *See* Answer Ex. C at 82 ("There was a firearm
7 in the home and so I'm not real sure about that and that's why we regard Dr. Gilmar's [sic]
8 statement as being inconclusive.").

9 Furthermore, the Board determined at the hearing that petitioner knew the victim and
10 his family: the victim was the brother of a woman with whom petitioner shared a child, and
11 was also Ms. Henry's ex-boyfriend. Answer Ex. C at 17, 43. Petitioner stated at the
12 hearing that the victim had just gotten out of jail; that when petitioner came home, he heard
13 Ms. Henry screaming and saw the victim on top of her. *Id.* at 39-41. Petitioner thought that
14 the victim raped Ms. Henry, who was pregnant at the time; she then ran to the bathroom
15 and the victim moved to the couch. *Id.* The Board questioned petitioner's version of the
16 story as inconsistent with other records suggesting that petitioner may have been involved
17 in selling drugs and was competing for business, although petitioner acknowledged that his
18 girlfriend sold drugs out of the home. *Id.* at 42-43. However, the Board did not specify
19 which records were inconsistent with petitioner's statements, and those records are not
20 before the court. Thus, accepting petitioner's version of the crime and his motive for killing
21 the victim – rage over the victim's having raped his pregnant girlfriend – the court does not
22 agree with the Board's finding that the motive was trivial in relation to the severity of the
23 offense. While the rape would not have justified the killing, it was certainly a more
24 understandable motive than those that are typically presented by habeas petitioners (e.g.
25 theft of personal property or a perceived insult) and not one that the court would
26 characterize as trivial. Nonetheless, the other factors upon which the Board relied do
27 amount to some evidence in support of the Board's finding that the crime was committed in
28 a dispassionate and calculated manner.

9

### b.     Criminal and Social History

The Board reviewed the Probation Officer's Report and determined that petitioner was convicted of burglary in December 1977, reckless driving in September 1978, and burglary again in November 1979; he suffered two parole violations in 1984 and 1985. Answer Ex. C at 31-33 and Ex. D at 5.  Furthermore, petitioner was on parole at the time of the commitment offense.  Answer Ex. C at 49.  There is some evidence to support the Board's determination that petitioner had an escalating pattern of criminal conduct.

The evidence also supports the Board's determination that petitioner had an unstable social history in that he had committed several crimes, and after being sentenced to county jail and prison and being placed on probation and parole, he failed to profit from society's previous attempts to correct his criminality.  Answer Ex. C at 81-82.

### c.     Self-help Programs and Parole Plans

The Board found that petitioner stopped attending AA meetings in 2002 in order to focus on job skills, and had not attended any self-help programs since then.  Answer Ex. C at 68-69.  Appearing at the hearing, the deputy district attorney of Los Angeles County also expressed concern that petitioner had not been involved in any kind of AA or NA programs for two years, and was at risk of returning to his previous history of selling drugs.  *Id.* at 74. Given petitioner's background as an admitted drug user, *id.* at 19, there is some evidence to support the Board's determination that he "needs self-help and therapy if available in order to face, discuss, understand, and cope with stress in a nondestructive manner." *Id.* at 83.

The Board commended petitioner for acquiring marketable skills while incarcerated, but found that petitioner did not have a specific offer of employment or a letter confirming his plans to live at his mother's home.  *Id.* at 56-63, 83.  Therefore, there is some evidence to support the Board's determination that petitioner lacks realistic parole plans.

Contrary to petitioner's claim that the Board's decision violated his right to due process, the record contains some evidence to support the Board's parole unsuitability determination.  The state courts' denial of habeas relief on this claim was neither contrary

10

to, nor an unreasonable application of, clearly established federal law.

### C.     *Biggs* Challenge

In his second claim for relief, petitioner contends that the Board improperly relied on the unchanging circumstances of the offense to find him unsuitable for parole.  Petitioner relies on *Biggs*, where the Ninth Circuit suggested in dicta that sole reliance on the commitment offense could raise "serious questions" about a state prisoner's liberty interest in parole.  *See Biggs*, 334 F.3d at 916-17.  *Biggs* upheld the initial denial of a parole release date based solely on the nature of the crime and the prisoner's conduct before incarceration, but cautioned that the value of the criminal offense fades over time as a predictor of parole suitability: "The Parole Board's decision is one of 'equity' and requires a careful balancing and assessment of the factors considered. . . .  A continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation."  *Biggs*, 334 F.3d at 916-17.

As the Ninth Circuit noted in *Sass*, "*Biggs* affirmed a denial of parole after holding that the circumstances of the offense and conduct prior to imprisonment constituted some evidence to support the Parole Board's decision."  *Sass*, 461 F.3d at 1126 (citing *Biggs*, 334 F.3d at 917).  *See Biggs*, 334 F.3d at 916 ("As in the present instance, the parole board's sole supportable reliance on the gravity of the offense and conduct prior to imprisonment to justify denial of parole can be initially justified as fulfilling the requirements set forth by state law.").

The Ninth Circuit has expressed competing views on *Biggs* in subsequent panel decisions.  In *Sass*, the Ninth Circuit held that evidence of Sass's prior offenses and the gravity of his commitment offenses constituted some evidence to support the Board's decision.  461 F.3d at 1129.  Acknowledging the cautionary statements in *Biggs* concerning the potential for a due process violation by continued reliance in the future on immutable factors, *Sass* criticized that part of the opinion as improper speculation about how future parole hearings could proceed.  *Ibid.*

11

1    In *Irons*, however, the Ninth Circuit echoed the concern raised in *Biggs* and
2 expressed its "hope that the Board will come to recognize that in some cases, indefinite
3 detention based solely on an inmate's commitment offense, regardless of the extent of his
4 rehabilitation, will at some point violate due process, given the liberty interest in parole that
5 flows from the relevant California statutes." *Irons*, 505 F.3d at 854 (citing *Biggs*, 334 F.3d
6 at 917). Although the court determined that the Board's unsuitability finding was supported
7 by "some evidence" that Irons' crime was especially cruel and callous, the *Irons* panel
8 pointed out that in the cases holding that sole reliance on the commitment offense did not
9 violate due process, namely, *Irons*, *Sass* and *Biggs*, "the decision was made before the
10 inmate had served the minimum number of years required by his sentence." *Irons*, 505
11 F.3d at 852-54. *Irons* reasoned that due process was not violated when these prisoners
12 were deemed unsuitable for parole "prior to the expiration of their minimum terms," even if
13 they had demonstrated substantial evidence of rehabilitation. *Id.* at 854.

14    Recently, the Ninth Circuit held rehearing en banc in *Hayward v. Marshall*, 512 F.3d
15 536 (9th Cir.), *reh'g en banc granted*, 527 F.3d 797 (9th Cir. 2008), which presented a state
16 prisoner's due process habeas challenge to the denial of parole. The three-judge *Hayward*
17 panel had concluded that the gravity of the commitment offense had no predictive value
18 regarding the petitioner's suitability for parole, and held that the governor's reversal of the
19 Board's grant of parole was not supported by some evidence and resulted in a due process
20 violation. 512 F.3d at 546-47. The Ninth Circuit has not yet issued an en banc decision in
21 *Hayward*; since holding rehearing en banc on June 24, 2008, the Ninth Circuit has ordered
22 briefing on the questions, *inter alia*, whether the order granting rehearing en banc should be
23 vacated and submission of the matter deferred, pending the California Supreme Court's
24 decisions in *In re Lawrence*, No. S154018 and *In re Shaputis*, No. S155872, both of which
25 cases were argued on June 4, 2008. *Hayward v. Marshall*, No. 06-55392, slip op. at 2 (9th
26 Cir. July 10, 2008).

27    Unless or until the en banc court overrules the holdings of the earlier Ninth Circuit
28 panel decisions in *Biggs*, *Sass* and *Irons*, these cases hold that California's parole scheme

12

creates a federally protected liberty interest in parole and therefore a right to due process which is satisfied if some evidence supports the Board's parole suitability decision. *Sass*, 461 F.3d at 1128-29. These cases also hold that the Board may rely on immutable events, such as the nature of the conviction offense and pre-conviction criminality, to find that the prisoner is not currently suitable for parole, *Sass*, 461 F.3d at 1129. *Biggs* and *Irons* further suggest, however, that over time, the commitment offense and pre-conviction behavior become less reliable predictors of danger to society such that repeated denial of parole based solely on immutable events, regardless of the extent of rehabilitation during incarceration, could violate due process at some point after the prisoner serves the minimum term on his sentence. *See Irons*, 505 F.3d at 853-54.

Relying on *Biggs* and *Irons*, petitioner contends that the commitment offense is no longer a reliable predictor of his present and future dangerousness and does not satisfy the "some evidence" standard. Respondent counters that the court may not grant relief on the purported *Biggs* claim because *Biggs* is not clearly established federal law as determined by the Supreme Court. Assuming, without deciding, that under some circumstances, habeas relief may be granted under *Biggs* on a claim that parole denial based on the Board's sole reliance on the commitment offense and other unchanging factors does not satisfy the some evidence standard, the court finds that petitioner fails to establish the predicate for a *Biggs* claim because the Board did not rely solely on unchanging factors such as the commitment offense, but also considered petitioner's escalating pattern of criminal conduct, unstable social history and failure to profit from society's previous attempts to correct criminality, need for participation in self-help programs, and lack of parole plans. Thus, the state courts' denial of relief was neither contrary to, nor an unreasonable application of, clearly established federal law.

## II. Plea Agreement

In Claim Three, petitioner contends that by denying him parole the Board has breached his plea bargain, because it is in effect treating him as if he had been convicted of first-degree murder. The court of appeal denied this claim "for failure to show that the

13

denial of parole constitutes a breach of petitioner's 1987 plea bargain or that the plea bargain limits the period of time that petitioner may lawfully be kept in custody." *In re Perkins*, slip op. at 1.

Due process requires that a guilty plea be both knowingly and voluntarily made. *See Boykin v. Alabama,* 395 U.S. 238, 242-43 (1969). The clearly established test for determining the validity of a guilty plea, is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). A habeas petitioner claiming a due process violation based on his plea agreement, bears the burden of establishing that his guilty plea was not knowing and voluntary. *See Parke v. Raley*, 506 U.S. 20, 29-30 (1992).

Petitioner does not allege that his plea was involuntary. Rather, he contends that he "specifically understood the conditions regarding his plea. Central to this contract was the understanding that petitioner would be released on parole if he met the suitability criteria, served sufficient time per the Board of Prison Terms Matrix." Pet. at 24-25.

Petitioner's plea bargain called for a sentence of seventeen years-to-life and that is what he received. Answer Ex. A. At the time of the June 2004 Board hearing, petitioner had served fifteen years of his sentence and had been considered for parole three times. *See* Pet. at 7. Although petitioner contends he is being punished as if he had pleaded to first-degree murder, he actually is receiving the parole considerations that his seventeen-to-life sentence entitles him. First degree murder is punishable by death, life without parole, or a term of twenty-five years to life. Cal. Penal Code § 190(a). By accepting the plea agreement, petitioner has been eligible for parole consideration much earlier than if he had been convicted of first-degree murder.

This claim is without merit. The state courts' rejection of petitioner's argument was not contrary to, or an unreasonable application of, clearly established Supreme Court authority.

///

///

14

## CONCLUSION

Based on the foregoing, the petition for a writ of habeas corpus is DENIED. The clerk of the court shall terminate all pending motions, enter judgment for respondent, and close the file.

**IT IS SO ORDERED.**

Dated: July 30, 2008.

PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\PJH\HC.06\PERKINS6012.deny.wpd